# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON SHALLENBERGER, SANDRA BIANCO, NICOLE METZGER, V.N.G. (Age 9), and V.L.G. (Age 6),<br><br>Plaintiffs,<br><br>v.<br><br>ALLEGHENY COUNTY, ALLEGHENY COUNTY CHILDREN AND YOUTH SERVICES, and MARIA DURANTI and AUTUMN SMITH, individually and in their capacity as employees of Allegheny County Children and Youth Services.<br><br>Defendants. | 2:20-cv-00073-NR |

## OPINION ON PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION [ECF 4 AND 31]

### J. Nicholas Ranjan, United States District Judge

This is an unfortunate case involving the termination of a mother's parental rights, in her absence, which led to the potential loss of custody of her two children. The mother, Plaintiff Nicole Metzger, claims her due-process rights were violated when Defendant Allegheny County Children and Youth Services (CYS) and others failed to notify her of a hearing at which her parental rights would be terminated. This led to a state-court judge terminating those rights, and now the children are about to be adopted by another relative as part of those state proceedings.

Ms. Metzger, along with her parents and children, filed this lawsuit and multiple motions for injunctive relief, claiming a violation of her constitutional

rights and requesting that this Court stop the adoption, reinstate her parental rights, and return her children to her.

While the Court is sympathetic to Ms. Metzger's situation, this is a matter that only the state courts can adjudicate. Specifically, because granting the relief Plaintiffs seek would require the Court to conclude that the state court erred, the *Rooker-Feldman* doctrine bars the Court from exercising jurisdiction, at least over the claims seeking to overturn the parental-rights-termination order. But even if this Court had jurisdiction, the Supreme Court and Third Circuit have clearly stated that, under the principles of *Younger*, lower courts must abstain from hearing cases like this one. Out of comity for the state court, this Court must abstain from second-guessing the judgment of the state court regarding family-law issues that are uniquely matters of state concern. The Court will therefore deny the motions for preliminary injunction and emergency preliminary injunction.

## FACTUAL BACKGROUND

### I. State-court proceedings.

As described in the various transcripts and records, Ms. Metzger and the fathers of her two children have an unfortunate history of drug abuse, incarceration, and mental-health issues. In August 2017, CYS filed dependency petitions for the children, asserting that they should be under court supervision. On May 24, 2017, the state court commanded CYS to take the children into custody. [ECF 35-2, p. 11]. Both dependency petitions were granted, and on August 8, 2017 the children were found to be dependent. [ECF 35-2, p.11].

On May 3, 2018, CYS filed petitions for involuntary termination of parental rights, demanding the termination of Ms. Metzger's parental rights,

as well as those of the children's biological fathers. [ECF 35-2, pp. 11-12]. On May 30, 2018, the state court conducted a permanency-review hearing and a termination-of-parental-rights hearing for both children. [ECF 35-1, p. 3]. Ms. Metzger did not attend the hearing, and CYS workers told the court that they had searched for Ms. Metzger, but could not locate her. [ECF 35-1, pp. 6-11].

Because the termination of parental rights was contested, it was necessary for the court to conduct another hearing. [ECF 35-1, pp. 4, 11-12]. That hearing occurred on August 31, 2018. [ECF 35-2]. Ms. Metzger did not attend, and the parties dispute the extent to which CYS tried to locate Ms. Metzger and whether she had notice of the hearing.

The state court terminated Ms. Metzger's parental rights in September 2018. [ECF 35-3, p. 11, ECF 35-4, pp. 14-15]. Ms. Metzger did not seek to appeal those orders in state court, and so they are now final.

Recently, Ms. Metzger and her parents learned that the children were scheduled to be adopted on February 28, 2020 by Ms. Metzger's half-sister and her husband. On February 19, 2020, they filed in state court an "Objection to Jurisdiction and Motion to Schedule Contested Hearing on Reconsideration of TPR." [ECF 35-19, p. 6]. They argued that a hearing on reconsideration of termination of parental rights should be held, the adoption proceedings should be "discontinued," and the matter should be "remanded to proceedings to determine said parties' parental and custody rights." [ECF 35-19, pp. 5, 8]. They argued this relief should be granted because Ms. Metzger's parental rights and whatever rights the children's grandparents held were terminated "without notice and due process, and without legal cause." [ECF 35-19, pp. 7-8]. The state court denied the request on February 24, 2020. [ECF 35, p. 25].

However, the adoption proceedings have still not occurred. The state court continued the hearing from February 28, 2020 to March 20, 2020. [ECF 35, p. 2]. The court then further continued the hearing to sometime "after April 3, 2020" because of the current Coronavirus pandemic that has stalled many court proceedings. [ECF 40].

## II. Federal-court proceedings.

Plaintiffs filed their federal complaint on January 16, 2020, alleging violations of their substantive and procedural due process rights under the Fourteenth Amendment. [ECF 1]. Here, they demand "injunctive relief reinstating Plaintiff Nicole Metzger's parental rights," as well as damages [ECF 1, p. 10, "Wherefore" clause].

The next day, on January 17, 2020, Plaintiffs filed a motion for preliminary injunction, seeking an injunction requiring that the children "be returned to the custody of Plaintiffs Jason Shallenberger, Sandra Bianco, and Nicole Metzger pending notice and a hearing on the merits as to the best interest of the children." [ECF 4, p. 5, "Wherefore" clause].

On January 23, 2020, the Court held a telephonic status conference. [ECF 11]. The Court expressed its concern regarding the jurisdictional issues in the case, including the potential application of the *Rooker-Feldman* doctrine, and referred the parties to mediation. An unsuccessful mediation occurred on February 14, 2020. [ECF 17].

On February 18, 2020, Plaintiffs filed their first emergency motion for preliminary injunction. In that motion, Plaintiffs' counsel stated that they learned at the mediation that a final adoption hearing was scheduled for February 28, 2020. [ECF 18, p. 4, ¶ 18]. This motion requested a hearing as

well as "an emergency injunction staying the adoption proceedings" until resolution of the federal court litigation. [ECF 18, p. 5, "Wherefore" clause].

The next day, on February 19, 2020, the Court ordered Plaintiffs to show cause why the relief sought in their pending motion and emergency motion for preliminary injunction was not precluded by the *Rooker-Feldman* doctrine. [ECF 19]. The issue was fully briefed by February 20, 2020. *See* [ECF 19].

On February 20, 2020, the Court ordered another telephonic status conference for the next day. [ECF 22]. The Court informed the parties that they should be prepared to discuss: (1) scheduling of a hearing and the need for discovery in advance; (2) "threshold issues of the Court's jurisdiction and authority to issue injunctive relief, including *Rooker-Feldman*, *Younger*, the Anti-Injunction Act, sovereign immunity, and the domestic relations abstention doctrine recognized in this Circuit"; and (3) efforts to reach agreement among the parties to continue the state-court adoption proceedings. [ECF 22]. All of these items were discussed during the telephonic status conference, and the parties agreed that the matter could be addressed and then decided by the Court on the papers. [ECF 25].

Later that day, on February 21, 2020, the Court issued a briefing schedule for Plaintiffs' first emergency motion, which the Court treated as a motion for temporary restraining order. [ECF 26]. The Court directed all parties to "address the threshold procedural issues raised in the Court's previous order." [ECF 26].

Also on February 21, 2020, Defendants' counsel informed all parties and the Court that the final adoption hearing was being continued by the state court until late March 2020. Given this fact, as well as Plaintiffs' late filing of their brief, the Court denied Plaintiffs' first emergency motion without

prejudice. [ECF 27]. The Court instructed Plaintiffs that they could re-file by March 6, 2020. [ECF 29].

Plaintiffs filed their second emergency motion on that date. [ECF 31]. This motion requested "a preliminary injunction staying the adoption proceedings" until resolution of the federal court litigation. [ECF 31, p. 5, "Wherefore" clause]. In the alternative, the motion stated that if the Court "treats this Motion as a Motion for Temporary Restraining Order, the Plaintiffs request that the Court stay the adoption for as long as the law permits, or until such time as a hearing on a Motion for Preliminary Injunction can be held." [ECF 31, p. 5, "Wherefore" clause]. Briefing on this second emergency motion was completed on March 23, 2020. In their reply brief, Plaintiffs changed the scope of their requested relief. They now seek a temporary restraining order staying the adoption until a "hearing can be held on the merits of a more permanent injunctive order." [ECF 41, p. 2]. They also changed their requested emergency relief from an injunction directed toward stopping the state court to an injunction enjoining CYS from consenting to the adoption at the upcoming adoption hearing. [ECF 41, p. 5]. Regardless of the various provisional relief they seek, Plaintiffs' complaint ultimately seeks from this Court reinstatement of Ms. Metzger's parental rights.

## DISCUSSION & ANALYSIS

I. **The *Rooker-Feldman* doctrine applies based on the nature of the injunctive relief that Plaintiffs seek.**

The Court ordered the parties to brief the issue of whether the *Rooker-Feldman* doctrine applies here, because that doctrine implicates this Court's jurisdiction. [ECF 19, 22]. After a careful review of the parties' arguments,

the Court finds that it lacks jurisdiction based on the relief that Plaintiffs seek in their complaint.

The *Rooker-Feldman* doctrine is one that deprives federal courts of subject-matter jurisdiction when "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court's judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (cleaned up).

Here, those elements are met because: (1) Plaintiffs lost the termination-of-parental-rights hearing in state court; (2) Plaintiffs are complaining of injuries caused by that termination order; (3) that order was rendered in September 2018, before this federal suit was filed; and (4) Plaintiffs are asking this Court to reverse that termination order.

Plaintiffs argue that the *Rooker-Feldman* doctrine does not apply because their claims are based on attacking the actions of state officials (who deprived them of notice and therefore due process), not attacking the judgment of the state court. That is true, and normally would be a sound defense against *Rooker-Feldman*. The problem, though, is the relief Plaintiffs seek. If Plaintiffs were seeking only damages, then their due-process claims against Defendants might be proper. But while Plaintiffs are attacking the state officials that failed to give them notice, they are expressly asking this Court to undo the state court's parental-termination decision. This means that Plaintiffs' claims are intertwined with the state court's decision such that Plaintiffs' injuries and the relief they seek are ultimately linked to the state court's decision.

The Third Circuit has held that lower courts must examine the nature of the requested relief (*i.e.,* injunction vs. damages) in determining whether a federal claim is inextricably intertwined with a state court's decision. *See Ernst v. Child & Youth Servs. of Chester County*, 108 F.3d 486, 491 (3d Cir. 1997); *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996) ("If the relief requested in the federal action . . . would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit.") (citation and quotation omitted); *Marran v. Marran*, 376 F.3d 143, 149-50 (3d Cir. 2004).[1]

Indeed, the *Rooker–Feldman* doctrine bars "lower federal courts from exercising jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment." *Marran*, 376 F.3d at 149; *see also Ernst,* 108 F.3d at 491; *Khalil v. N.J. Div. of Child Protection & Permanency*, 594 F. App'x 88, 90 (3d Cir. 2015) ("[F]ederal courts lack jurisdiction over suits that are essentially appeals from state-court judgments."). In other words, "federal courts lack jurisdiction to review state court judgments where the relief sought is appellate review." *Walthour v. Child &Youth Servs.*, 728 F. Supp. 2d 628, 639 (E.D. Pa. 2010) (citations omitted).

---

[1] There appears to be a circuit split on this issue. In *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1333 n.7 (11th Cir. 2001), the Eleventh Circuit noted that while the Third and Sixth Circuits look at the nature of the requested relief to determine application of *Rooker-Feldman* (*i.e.,* injunction vs. damages), the Eleventh Circuit does not. It reasoned that in both *Ernst*, 108 F.3d 486, and *Holloway v. Brush*, 220 F.3d 767, 778–79 (6th Cir. 2000), the courts permitted plaintiffs to maintain Section 1983 damages claims. *Goodman*, 259 F.3d at 1333 n.7. The Eleventh Circuit found this "inconsistent" with its law, which "focus[es] on the federal claim's relationship to the issues involved in the state court proceeding, instead of on the type of relief sought by the plaintiff." *Id.* at 1333. This Court is, of course, bound by Third Circuit precedent.

Invoking *Rooker-Feldman*, courts in this Circuit routinely dismiss claims for Section 1983 injunctive relief because that relief would be the functional equivalent of an appeal of a state-court custody determination. *See Walthour*, 728 F. Supp. 2d at 639 ("Plaintiff seeks injunctive relief to have his minor children returned immediately. Such relief would require this Court to find that the state court child custody determination regarding Plaintiff's children is null and void. However, as explained above, the *Rooker–Feldman* doctrine bars this type of relief."); *Bonawitz v. Fosko*, 3:14–0783, 2014 WL 4165633, at *11 (M.D. Pa. August 20, 2014) ("It is . . . clear that Plaintiff Bonawitz is requesting this federal Court to review and overturn the decisions and Orders of the Luzerne County Court and to grant her injunctive relief in the form of full custody of her children. . . . Thus, we find that Plaintiff Bonawitz's claims in the present case are the 'functional equivalent of an appeal.'"); *Calipo v. Erie County Office of Children & Youth Servs.*, 786 F. App'x 329, 331 (3d Cir. 2019) (applying *Rooker-Feldman* because "[r]estoring Calipo's parental rights . . . would require the District Court to invalidate the state-court's judgment.").

Here, it is critical that Plaintiffs' complaint seeks a final order in the form of "injunctive relief reinstating Plaintiff Nicole Metzger's parental rights[.]" [ECF 1, p. 10, "Wherefore" clause]. This is the key to invocation of *Rooker-Feldman*. While Plaintiffs' various pending motions seek temporary relief (*e.g.,* staying the adoption hearing [ECF 31] or enjoining CYS temporarily from consenting to the adoption [ECF 41]), ultimately what Plaintiffs really seek is a final injunction overturning the parental-rights termination order and returning the children to Ms. Metzger's custody, with the requested temporary relief serving as only a stop-gap in the meantime. This is prohibited by *Rooker-Feldman*.

While Plaintiffs rely on three decisions, including one by this Court, to argue that *Rooker-Feldman* does not apply [ECF 32, pp. 7-9], these cases are distinguishable because none involved a plaintiff seeking an injunction that reverses a state court's decision.

First, in *Allen v. DeBello*, 861 F.3d 433 (3d Cir. 2017), plaintiffs, who were several fathers of minor children, challenged the state law governing child custody proceedings between New Jersey parents, alleging in part that court policy favored mothers over fathers. *Id.* at 436. Importantly, the plaintiffs did not seek relief in the form of overturning specific prior custody orders but, rather, sought general, *prospective* declaratory and injunctive relief in the form of "a declaration that the challenged standards and practices are unconstitutional and unlawful, and an enforceable injunction against their use." *Id.*

Second, in *B.S. v. Somerset County*, 704 F.3d 250 (3d Cir. 2013), a mother filed suit in federal court after a county CYS obtained an order from a state-court judge transferring custody of her daughter to her father. The mother did not bring a claim for injunctive relief or seek to overturn the custody order. Instead, the mother only sought damages related to alleged substantive and procedural due-process violations. *Id.* at 260.

Third, in *McGreal v. Westmoreland Cty.*, No. 2:18-CV-1601-NR, 2020 WL 516309 (W.D. Pa. Jan. 28, 2020), plaintiffs, who were the grandparents of a minor child, argued their constitutional due-process rights were violated by defendants not properly notifying them of their rights to participate in the care and placement of the child. *Id.* at *1. Notably, the child was already adopted by foster parents by the time plaintiffs sued, and plaintiffs were not seeking injunctive relief in the form of undoing the state-court adoption. Rather, as

the Court specifically noted, they only sought "forward-looking" "declaratory and injunctive relief" and damages. *Id.* at *2.

These cases are all different from this one based on the nature of the relief requested. Plaintiffs here ask this Court to overturn the state court's parental-termination order. That is a bridge too far. *Rooker-Feldman* forbids this Court from sitting as a *de facto* appellate court over a state family-court judge.

## II. The *Younger* abstention doctrine also precludes injunctive relief in the ongoing adoption proceedings.

While the Court finds that it lacks jurisdiction over Plaintiffs' claims for retrospective injunctive relief, the Court would have to abstain from the case anyway under the *Younger* abstention doctrine. In addition to ultimately asking this Court to overturn the parental-termination order, Plaintiffs' emergency motions ask this Court for prospective, provisional injunctive relief. That is, Plaintiffs have asked this Court to forestall the adoption proceedings that are imminent. Because Plaintiffs seek prospective injunctive relief in the ongoing state-court custody and adoption proceedings, the abstention doctrine established by *Younger v. Harris*, 401 U.S. 37 (1971), applies.

The *Younger* abstention doctrine "reflects a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Wattie-Bey v. Attorney General's Office*, 424 F. App'x 95, 96 (3d Cir. 2011) (quoting *Gwynedd Properties, Inc. v. Lower Gwynedd Township*, 970 F.2d 1195, 1199 (3d Cir. 1992)). "Accordingly, 'in certain circumstances, district courts must abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would

offend principles of comity by interfering with an ongoing state proceeding.'" *Id.* at 96-97 (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010)).

While Plaintiffs argue that *Younger* only applies to pending state-court criminal proceedings [ECF 32, pp. 10-11], the doctrine has been extended to certain civil proceedings. In *Sprint*, the U.S. Supreme Court made clear that a "federal court's obligation to hear and decide a case is virtually unflagging." *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (cleaned up). As such, the Court held that for *Younger* abstention to apply, the ongoing state proceeding must fit into at least one of three categories: (1) state criminal prosecutions; (2) certain quasi-criminal civil enforcement proceedings; or (3) "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 78 (cleaned up).

The Third Circuit too has required district courts to examine the ongoing state proceedings to determine in which category they fall, and has found it to be erroneous for a district court to "mechanically" apply the three-part *Younger* analysis. *See Hamilton v. Bromley*, 862 F.3d 329, 337 (3d Cir. 2017) (finding that "*Younger* abstention is proper after a court identifies one of the three categories of proceedings").

The first category clearly does not apply, and thus the question is whether the state proceedings here fall within the second or third categories— that is, either quasi-criminal civil enforcement proceedings, or "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." The Court finds that the ongoing state proceedings fall within both categories, for the following two reasons.

First, the state-court proceedings are quasi-criminal, as they are "akin to a criminal prosecution" in "important respects." *See Sprint*, 571 U.S. at 79 ("Our decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings 'akin to a criminal prosecution' in 'important respects.'") (internal citation omitted). The proceedings in state court concern a contested termination of parental rights and associated adoption, brought pursuant to the Pennsylvania Adoption Act, 23 Pa. C.S.A. § 2101, *et seq*. They were initiated by a government agency—*i.e.*, CYS— through a petition. [ECF 35-2, pp. 11-12]. This was done after CYS conducted an investigation, found that the children's parents were incarcerated, and took custody of the children. [ECF 35-2, pp. 9-11]. As a result of CYS's findings, it began proceedings to terminate the rights of Ms. Metzger, and to ultimately place the children for adoption with their maternal aunt. [ECF 35-2, p. 33-35].

At the contested termination hearing itself, CYS presented evidence from its investigation, which included pervasive drug use by the parents, and the presence of drug paraphernalia at the residence where the children lived. [ECF 35-2, pp. 13-18, 30, 51]. The law makes clear that because of the nature of the proceedings, the parents had due-process rights, and thus a fair amount of the hearing was devoted to establishing that Ms. Metzger had notice of the hearing. [ECF 35-2, pp. 5-6].

Based on the nature of the state-court proceedings, these proceedings are quasi-criminal in nature, having many hallmarks of a criminal prosecution. They were brought after an investigation by the government, brought by the government, the parents (much like criminal defendants) had due-process rights, and much of the testimony and relevant factors concerned criminal conduct by the parents. "Civil enforcement actions that trigger *Younger* are

- 13 -

typically brought by state actors and involve official investigations and formal complaints or charges." *Wells Fargo Bank, N.A. v. Carnell*, 3:16-cv-130, 2017 WL 1498087, at *5 n.3 (W.D. Pa. Apr. 25, 2017) (citing *Dicesare v. Office of Children, Youth & Families*, No. 11-cv-985, 2012 WL 2872811 (W.D. Pa. July 12, 2012) (case against county child-welfare office involving ongoing child-custody and parental-rights proceeding, which had been initiated by CYS)).

Indeed, the Supreme Court in *Sprint* hinted that a proceeding just like the state-court one here is quasi-criminal, as it cited its prior decision in *Moore*, which was a state-initiated, child-custody proceeding, as an example of a quasi-criminal matter. *See Sprint*, 571 U.S. at 79 (citing "*Moore v. Sims*, 442 U.S. 415, 419–420, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents)").[2]

Second, even if the proceedings in state court are not quasi-criminal, they fall within the third *Sprint* category, as they involve "orders uniquely in furtherance of the state courts' ability to perform their judicial functions." Courts within this Circuit have repeatedly held that child-custody cases fit "squarely into the third category of exceptional cases[]" and that "[c]ustody cases are particularly appropriate for *Younger* abstention." *Karl v. Cifuentes*,

---

[2] The fact that the state proceedings here were started by the county CYS is critical. In *Edelglass v. New Jersey*, No. CIV.A. 14-760 FLW DE, 2015 WL 225810 (D.N.J. Jan. 16, 2015), aff'd sub nom. *Allen v. DeBello*, 861 F.3d 433 (3d Cir. 2017), a district judge found that custody-related proceedings in state court were not quasi-criminal, and thus *Younger* did not apply. The Third Circuit affirmed that decision on other grounds, but acknowledged in a footnote, without discussion, that the district court's decision not to abstain was correct. Unlike in this case, in *Edelglass*, the state-court proceedings were all custody disputes brought by and between the parents, not initiated by the state to terminate parental rights and place the children with adoptive parents. Thus, the proceedings there, unlike the ones at issue here, were properly construed as not being quasi-criminal.

No. 15-2542, 2015 WL 4940613, at *4 (E.D. Pa. Aug. 13, 2015) (citing *Mikhail v. Khan*, 991 F. Supp. 2d 596, 627 (E.D. Pa. 2014) (finding that the third *Sprint* category applies to a state court child custody proceeding)); *see also Godfrey v. Upland Borough*, 246 F. Supp. 3d 1078, 1094 (E.D. Pa. 2017) ("the third category of abstention-worthy disputes has been applied only to a few exceptional types of cases . . . such as child custody proceedings[.]").

In fact, the Third Circuit has recently examined a similar case to this one, and found that it falls within the third *Sprint* category. In *Silver v. Court of Common Pleas of Allegheny County*, No. 19-1120, 2020 WL 584068 (3d Cir. Feb. 6, 2020), the Third Circuit held that a state-court order governing the conduct of the parties and counsel after a custody determination had been made was an "order uniquely in furtherance of a state court's ability to perform judicial functions." *Id.* at *2. The Third Circuit reasoned that the "order seeks to preserve the state court's power to further one of its uniquely judicial functions – promoting and protecting the best interests of a child whose custody had been previously adjudicated by the court." *Id.*

Similarly, here, the job of the state court is to determine what is in the best interests of the children and make a custody decision. The state orders at issue are: (1) the termination of parental rights; and (2) the pending adoption proceedings, which will lead to a final adoption order. Both of these types of orders are unique to the state court's authority and obligation to ensure custody decisions in the best interests of the children. While it is true that not all family-court orders (and not even all custody-related orders) would be covered by the third *Sprint* category,[3] the orders here go to the very heart of

---

[3] *Compare Malhan v. Secretary United States Department of State*, 938 F.3d 453, 463-64 (3d Cir. 2019) (holding that challenges to certain child support and

the custody determinations that state courts make, and so fall within the third category.

Having found that this case falls within not just one, but two, of the categories set forth in *Sprint*, the Court's next step in determining whether to abstain is to apply the three-part framework of *Younger*. "*Younger* abstention is appropriate when: '(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims.'" *Wattie-Bey*, 424 F. App'x at 97 (quoting *Gwynedd Properties*, 970 F.2d at 1199).

The Court is guided here by the Third Circuit's decision in *Wattie-Bey*, 424 F. App'x 95, which affirmed a district court's decision to abstain in a case similar to this one. There, two biological parents sought declaratory relief, an injunction, and damages under Section 1983 to remedy alleged violations of their constitutional rights after a Pennsylvania-state trial court entered an order authorizing state officials to remove their child, and directed placement of the child with child and family services pending further custody proceedings. *Id.* at 96.

The Third Circuit affirmed the district court's dismissal of the complaint, holding, in part, that the *Younger* abstention doctrine precluded claims for prospective injunctive and declaratory relief. *Id.* at 96-97. The Third Circuit held that all three of the *Younger* elements were met—specifically, a pending state-court action, involving a uniquely state interest (domestic relations), and

---

garnishment orders were not subject to *Younger* abstention because they did not uniquely further the child-custody proceedings in that case).

an opportunity by the plaintiffs to obtain injunctive relief in the state proceedings. *Id.* at 97. As in *Wattie-Bey*, the *Younger* requirements here are met.

First, as in *Wattie-Bey*, the state-court proceedings remain pending, and Plaintiffs seek to stay those proceedings, including staying the adoption of the children. *See* [ECF 31 (seeking to stay future adoption proceedings)]. To be clear, the termination of parental rights was just one aspect of the state-court proceedings. Even though Ms. Metzger's rights have been terminated, the proceedings remain pending as to the adoption of the children. State law requires, as a pre-condition to the adoption, the termination of the natural parents' rights; but they are all part of the same ongoing matter. *See* Pennsylvania Adoption Act, 23 Pa. Cons. Stat. Ann. §§ 2101, *et seq.;* 23 Pa. Cons. Stat. Ann., Pt. III, Ch. 25 ("Proceedings Prior to Petition to Adopt").

Second, as in *Wattie-Bey*, this case involves an area of state interest. "Family relations are a traditional area of state concern." *Moore*, 442 U.S. at 435; *see also Wattie-Bey*, 424 F. App'x at 97 ("Pennsylvania clearly has a strong interest in administering its child welfare procedures and in adjudicating controversies that arise from that administration.") (cleaned up).

Third, as in *Wattie-Bey*, Plaintiffs can raise their claims and obtain relief in the state proceedings—*i.e.,* they can seek injunctive relief in state court, stalling the adoption and challenging the termination decision. *See Lazaridis*, 591 F.3d at 670-71 (explaining that *Younger* requires only an opportunity to present federal claims in state court, and the burden rests with plaintiff to show that state procedural law bars presentation of the claims).

Indeed, Plaintiffs have already sought the same type of injunctive relief in state court that they seek here—a telling signal to this Court that it should

abstain. That is, Plaintiffs filed a motion in state court on February 19, 2020, alleging a violation of Plaintiffs' due process rights (the same claims here) and sought a "discontinuance" of the adoption proceedings and reinstatement of Ms. Metzger's parental rights (the same injunctive relief they seek here). [ECF 35-19]. While the state court denied that motion on February 24, 2020 [ECF 35, p. 25], the motion shows that the state proceedings afforded Plaintiffs a right to raise their challenges.

In their reply brief, Plaintiffs argue that abstention is inappropriate because the state court denied their motion. [ECF 41, p. 4]. But that is immaterial for purposes of *Younger*. What matters is that Plaintiffs had a chance to raise their challenges, not whether they succeeded. *See Lazaridis,* 591 F.3d at 671 ("[A]lthough [plaintiff] did not raise his federal constitutional claims in state court and would likely be precluded from doing so now, this does not save his claim."). Plaintiffs fail to explain why their state-court motion or any other state-procedural avenues bar their ability to present their claims. That is a burden that Plaintiffs bear to overcome abstention, and they have failed to meet it. *See id.* at 670–71 (noting that the "burden on this point rests on the federal plaintiff to show that state procedural law barred presentation of its claims") (cleaned up).

Finally, even where all the *Younger* abstention prongs have been met, a court can refuse to abstain if there is an indication "of bad faith, harassment or some other extraordinary circumstance, which might make abstention inappropriate." *Wattie-Bey*, 424 F. App'x. at 97 (cleaned up). Plaintiffs have not argued that such circumstances exist, and the Court cannot discern any such bad faith or exceptional circumstances from the record.

Thus, the Court finds that it is appropriate to abstain under the principles of *Younger*, and not issue any prospective injunctive relief to bar any aspect of the ongoing state-court proceedings.

### III. Plaintiffs must indicate whether they intend to pursue any remaining damages claims.

Plaintiffs have primarily brought this case to seek injunctive relief. As discussed above, this Court lacks jurisdiction and must otherwise abstain from considering Plaintiffs' claims that seek injunctive relief. Plaintiffs, however, also seek damages. These claims for damages are not barred.

While injunctive relief overturning the parental-termination order is precluded under *Rooker-Feldman*, damages claims are not. *Rooker-Feldman*'s elements are not satisfied to the extent that Plaintiffs raise "independent claims regarding due process violations and alleged misconduct in connection with the termination of her parental rights." *Calipo*, 786 F. App'x at 332 (citations omitted). As in *Calipo*, Plaintiffs' complaint generally alleges "that certain actors conspired to deprive" Ms. Metzger "of due process by submitting fraudulent or misleading evidence and by failing to allow her to participate in the hearing process." *Id.* "The *Rooker-Feldman* doctrine does not bar those claims, as the alleged injuries do not flow from the state-court's judgment." *Id.* (citations omitted).

Similarly, while injunctive relief is precluded under *Younger*, as Plaintiffs "seek to recover damages for alleged violations of their constitutional rights," the Third Circuit has "observed that a district court, when abstaining from adjudicating a claim for injunctive relief, should stay and not dismiss accompanying claims for damages when such relief is not available from the

ongoing state proceedings." *Wattie-Bey*, 424 F. App'x at 97 (cleaned up). Thus, Plaintiffs' claims for damages are unaffected by *Younger*.

That said, it appears to the Court that Plaintiffs primarily, if not exclusively, brought this lawsuit to obtain the requested injunctive relief, and that their damages claims are ancillary. As such, this Court orders Plaintiffs to file a notice by April 2, 2020, indicating that they either intend to proceed with their damages claims or intend to voluntarily dismiss the remaining claims in this case.

## **CONCLUSION**

For all the reasons discussed above, Plaintiffs' motions for preliminary injunction and emergency preliminary injunction [ECF 4 and 31] are DENIED. Plaintiffs' claims seeking injunctive relief in the complaint are STRICKEN, due to this Court lacking jurisdiction over them. Plaintiffs must file a notice by April 2, 2020, indicating whether they intend to pursue or dismiss any remaining damages claims. An appropriate order follows.

DATED this 26th day of March, 2020.

BY THE COURT:

*/s/ J. Nicholas Ranjan*
United States District Judge