IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICOLE METZGER,<br>JASON SHALLENBERGER, and<br>SANDRA BIANCO, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-73 |
| | ) | |
| ALLEGHENY COUNTY,<br>MARC CHERNA, MARIA DURANTI,<br>and AUTUMN SMITH, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Nicole Metzger, the biological mother of two children, brings this action against Defendants Allegheny County and several of its employees, ostensibly for violations of Ms. Metzger's civil rights stemming from a state court case in which her parental rights were terminated. Plaintiffs Jason Shallenberger and Sandra Bianco, Ms. Metzger's stepfather and mother, respectively, bring a derivative state law claim against Defendants alleging fraud. Presently before the Court is the Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted and for Lack of Subject Matter Jurisdiction, and brief in support thereof, filed by Defendants Allegheny County, Marc Cherna, Maria Duranti, and Autumn Smith (Docket Nos. 65, 66), and Plaintiffs' response in opposition thereto (Docket No. 69). For the reasons set forth herein, Defendants' motion to dismiss is granted without prejudice to amendment with sufficient facts to state a claim.

## I. **Background**

As alleged in the Amended Complaint, Ms. Metzger is the biological mother of two minor children, V.N.G. and V.L.G. (hereinafter, "the children"), Mr. Shallenberger is Ms. Metzger's stepfather, and Ms. Bianco is Ms. Metzger's mother. (Docket No. 57, ¶¶ 1-3). As further alleged, Allegheny County is a local government subdivision organized under the laws of Pennsylvania, and Mr. Cherna is the Director of the Allegheny County Department of Human Services and has decision-making powers over Allegheny County Children Youth Family (hereinafter, "ACCYF"), an administrative subdivision of Allegheny County. (Id. ¶¶ 4, 5). At the time of the events alleged, Ms. Duranti was employed by Allegheny County as a caseworker for ACCYF, and Ms. Smith was employed by Allegheny County as a caseworker supervisor for ACCYF. (Id. ¶¶ 6, 7). Both Ms. Duranti and Ms. Smith are being sued in their individual and official capacities, while the Amended Complaint does not specify the capacity in which Mr. Cherna is being sued. (Id. ¶ 37).

For purposes of clarity, the Court includes a brief summation of its review of the underlying state court cases, which contain key determinative facts relevant to the disposition of Defendants' motion.[1] Plaintiffs aver that, on May 23, 2017, Mr. Shallenberger picked up V.L.G.

---

[1] While a court does not generally consider matters outside of the pleadings in ruling on a motion to dismiss, it may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d 125, 133 n.7 (3d Cir. 2016) (internal citations, quotation marks and emphasis omitted). Here, because Ms. Metzger's claims are based entirely on underlying state court proceedings, the docket sheets and certain documents filed on the dockets in those underlying cases are integral to her claim.

Additionally, Federal Rule of Evidence 201 permits the Court, on its own, at any stage of a proceeding, to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "A state court docket by its very nature can be accurately and readily determined, and the accuracy and authenticity of the docket cannot reasonably be questioned." Smierciak v. City of Pittsburgh Police Dep't, No. 2:18-cv-734, 2018 WL 6790312, at *2 n.3 (W.D. Pa. Dec. 26, 2018). Moreover, "Courts in the Third Circuit have held that a court may take judicial notice of dockets or other court opinions at the motion to dismiss stage." Id. (citing In re Congoleum Corp., 426 F.3d 675, 679 n.2 (3d Cir. 2005) (taking judicial notice of "state court proceedings insofar as they are relevant"); In re Trichilo, 540 B.R. 547, 549 (Bankr. M.D. Pa. 2015) (taking judicial notice of an underlying case's

from Ms. Metzger's home after she was arrested, at which point ACCYF left V.L.G. in the custody of Mr. Shallenberger and Ms. Bianco, while V.N.G. was left in the custody of his other grandfather. (Docket No. 57, ¶¶ 8-11). On May 3, 2018, Petitions for Involuntary Termination of Parental Rights ("TPRs") were filed in the Court of Common Pleas of Allegheny County, demanding that the parental rights of Ms. Metzger and both children's fathers be terminated. (Docket Nos. 35-3, 35-4 (Common Pleas Court docket sheets)). A hearing in the cases was held on May 30, 2018 in the Common Pleas Court, and on August 27, 2018, ACCYF removed V.L.G. from his grandparents' custody. (Docket Nos. 35-1; 57, ¶¶ 26-29). On August 31, 2018, a hearing was held in the Common Pleas Court regarding the contested TPRs for the children. (Docket Nos. 35-3, 35-4). Orders terminating Ms. Metzger's parental rights, dated August 31, 2018, were entered on the Common Pleas Court dockets on September 6, 2018. (Id.).

According to the Amended Complaint, Ms. Metzger was hospitalized from approximately August 3, 2018 until September 19, 2018 at three different healthcare facilities. (Docket No. 57, ¶ 19). Plaintiffs allege that Ms. Duranti and Ms. Smith contacted Mr. Shallenberger by telephone and asked him to serve paperwork on Ms. Metzger, but he refused to do so. (Id. ¶¶ 20-23). Affidavits of Diligent Search, an Affidavit of Service, and Proofs of Publication were filed on the dockets in the Common Pleas Court cases. (Docket Nos. 35-7, 35-8, 35-9, 35-10, 35-11). The Common Pleas Court issued Orders of Court Ratifying Service by Publication on August 31, 2018. (Docket Nos. 35-12, 35-14). Those Orders stated that notice of

---

docket); Mollett v. Leith, No. 09-1192, 2011 WL 5407359, at *2 (W.D. Pa. Nov. 8, 2011) ("A court may also take judicial notice of the docket in Plaintiffs' underlying criminal trial."), aff'd sub nom. Mollett v. Leicth, 511 Fed. Appx. 172 (3d Cir. 2013); Carroll v. Prothonotary, No. 08-1683, 2008 WL 5429622, at *2 (W.D. Pa. Dec. 31, 2008) (taking judicial notice of court records and dockets of federal district courts)).

Therefore, the Court takes judicial notice of the docket sheets and certain documents (addressed infra) filed on the dockets in Case Nos. CP-02-AP-0103-2018 and CP-02-AP-0104-2018 in the Court of Common Pleas of Allegheny County, Pennsylvania, Orphans' Court Division, before the Honorable Paul E. Cozza. (Docket No. 35, containing documents from the underlying state court proceedings, which are referred to by Defendants in their brief in support of their motion to dismiss).

the proposed Amended Petitions for Involuntary Termination of Parental Rights, as well as the date, time, and place of the hearing on those petitions, had been given to Ms. Metzger once a week for three consecutive weeks in the Pittsburgh Post-Gazette and the Pittsburgh Legal Journal (on July 25, 2018, August 1, 2018, and August 8, 2018). (Id.). Ms. Metzger claims that she was not aware beforehand of when her parental rights were to be terminated, and Plaintiffs allege that they only learned that Ms. Metzger's parental rights had been terminated when they attempted to attend a subsequent hearing in the case on September 19, 2018 and were not permitted inside. (Docket No. 57, ¶¶ 24, 30-32).

On January 16, 2020, Plaintiffs filed their initial Complaint and, after Defendants filed a motion to dismiss, Plaintiffs filed their Amended Complaint on July 16, 2020, alleging three claims: (I) Violation of 42 U.S.C. § 1983: Procedural Due Process (Ms. Metzger v. all Defendants); (II) Violation of 42 U.S.C. § 1983: Fourteenth Amendment Substantive Due Process Right to Familial Association, Freedom of Intimate Association, and Family Privacy (Ms. Metzger v. all Defendants); and (III) State Law Claim: Fraud (Mr. Shallenberger and Ms. Bianco v. all Defendants). Ms. Metzger alleges that she was not served with notice of the hearing regarding the termination of her parental rights, and Mr. Shallenberger and Ms. Bianco allege that various misrepresentations were made to them by Defendants. For each Count, Plaintiffs seek damages in excess of $50,000.00, plus court costs, interest, and other damages as the Court deems appropriate, as well as punitive damages. Defendants have filed a motion to dismiss Counts I and II of the Amended Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state claims upon which relief can be granted, and Count III of the Amended Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

## II. **Standards of Review**

### A. **Federal Rule of Civil Procedure 12(b)(1)**

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the "court's 'very power to hear the case.'" Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006) (quoting Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). There is a crucial difference between a Rule 12(b)(1) motion that attacks a complaint on its face, and a Rule 12(b)(1) motion that attacks the existence of subject matter jurisdiction in fact – apart from any pleadings. See Mortensen, 594 F.2d at 891. With a facial attack, a court must consider the allegations of a complaint as true, as with a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6), discussed infra. See id. With a factual attack, however, the Court ordinarily is not required to limit its inquiry to the facts as they are pled in the complaint because a presumption of truth is not attached to the plaintiff's allegations, and the plaintiff bears the burden of proving that jurisdiction over the subject matter at issue exists. See id.; see also Brown v. Tucci, 960 F. Supp. 2d 544, 561 (W.D. Pa. 2013) (citing Dev. Fin. Corp. v. Alpha Housing & Health Care, 54 F.3d 156, 158 (3d Cir. 1995)).

### B. **Federal Rule of Civil Procedure 12(b)(6)**

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)); see Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007). While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the

pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Phillips, 515 F.3d at 231 (quoting Twombly, 550 U.S. at 555 (additional internal citation omitted)). Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555 (internal citation omitted)).

### III. Legal Analysis

#### A. Counts I and II:  Jurisdiction and the *Rooker-Feldman* Doctrine

In Counts I and II of the Amended Complaint, Ms. Metzger alleges that Defendants deprived her of her procedural and substantive due process rights in violation of 42 U.S.C. § 1983.  Although her allegations regarding Defendants' violative actions are not entirely clear,

in Count I Ms. Metzger claims that her procedural due process rights were violated because Defendants did not serve her with notice of the hearing that resulted in the termination of her parental rights in Common Pleas Court. (Docket No. 57, ¶¶ 24, 41). In Count II, Ms. Metzger alleges that her substantive due process rights to familial association, freedom of intimate association, and family privacy were violated because the lack of service of such notice by Defendants deprived her of a hearing to contest the termination of her parental rights. (Id. ¶ 51). For both claims, Ms. Metzger seeks damages based on the termination of her parental rights that, she alleges, resulted from the lack of service.[2]

Defendants move to dismiss these claims by contending, among other things, that the Court's jurisdiction over the claims is barred by the *Rooker-Feldman* doctrine. See D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). As both the Third Circuit and the Supreme Court have explained, however, the *Rooker-Feldman* doctrine has narrow applicability. See Allen v. DeBello, 861 F.3d 433, 438 (3d Cir. 2017). Four requirements must be met for *Rooker-Feldman* to prevent a federal district court from exercising jurisdiction over matters that would otherwise be amenable to its jurisdiction: "'(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.'" Id. (quoting Great West. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (internal quotation marks and citation omitted)). Here, while Ms. Metzger clearly lost in state

---

[2]     Originally in this action, Plaintiffs sought to obtain preliminary injunctive relief to halt the children's adoption process, to reinstate Ms. Metzger's parental rights, and to have the children be returned to her custody, but their motions were denied and their claims for injunctive relief were stricken by the Honorable J. Nicholas Ranjan. (Docket Nos. 42, 43). After Plaintiffs' Amended Complaint was filed, the case was reassigned to the Honorable W. Scott Hardy on September 22, 2020. (Docket No. 68).

court and the order terminating her parental rights was entered before she filed her federal suit, the other two *Rooker-Feldman* factors require further analysis.

In fact, "the two key requirements—that the injury must be caused by the state-court judgment and that the plaintiff must invite review and rejection of that judgment—are closely related." Great West. Mining, 615 F.3d at 168. Both requirements concern "whether the plaintiff's claims will require appellate review of state-court decisions by the district court." Id. at 169. "Prohibited appellate review 'consists of a review of the proceedings already conducted by the "lower" tribunal to determine whether it reached its result in accordance with law.'" Id. (quoting Bolden v. City of Topeka, 441 F.3d 1129, 1143 (10th Cir. 2006)). As the Third Circuit further explained:

> It is important to distinguish such appellate review from those cases in which "a party attempts to litigate in federal court a matter previously litigated in state court," Exxon Mobil [Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005)], or in which "the federal plaintiff and the adverse party are simultaneously litigating the same or a similar dispute in state court," Noel v. Hall, 341 F.3d 1148, 1163 (9th Cir. 2003) (cited with approval in Exxon Mobil). If the matter was previously litigated, there is jurisdiction as long as the "federal plaintiff present[s] some independent claim," even if that claim denies a legal conclusion reached by the state court. Exxon Mobil, 544 U.S. at 293 . . . (internal quotation marks & citation omitted; alteration in original). When "the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the bona fides of the prior judgment," the second, or federal, court "is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment." Bolden, 441 F.3d at 1143. In the case of simultaneous litigation, both suits may proceed under the well-established rule allowing parallel state and federal litigation. Noel, 341 F.3d at 1163. In neither of these situations, unlike in a suit seeking review of a state-court judgment, "does *Rooker–Feldman* bar subject matter jurisdiction in federal district court, for in neither situation is the federal plaintiff complaining of legal injury caused by a state court judgment because of a legal error committed by the state court." Id. at 1164. Instead, "in both situations, the plaintiff is complaining of legal injury caused by the adverse party." Id.

Great West. Mining, 615 F.3d at 169.

In accordance with this reasoning, Ms. Metzger argues that *Rooker-Feldman* does not deprive this Court of jurisdiction here because she is asserting an independent claim challenging Defendants' actions in allegedly failing to serve her with notice of the hearing at issue; she is not challenging the outcome of the hearing itself, that is, the state court's decision to terminate her parental rights. In other words, the state court judgment did not allegedly cause the complained-of injury – the lack of service of notice – rather, Defendants' alleged failure to serve her caused that injury. Moreover, Ms. Metzger argues that, while she is seeking damages caused by the lack of notice (the outcome of the underlying case), she is not asking this Court to reverse the state court's decision in that case. Thus, she asserts that her claims are independent from her state court case and her damages are, appropriately, based on those claims.

Ms. Metzger cites two recent opinions by the Third Circuit to bolster her argument that the Court's jurisdiction is appropriate here. First, in Allen v. DeBello, 861 F.3d 433 (3d Cir. 2017), a group of fathers of minor children alleged that New Jersey family courts treated them unfairly in violation of the Fourteenth Amendment. The Third Circuit held that *Rooker-Feldman* did not apply there because it "does not bar suits that challenge actions or injuries underlying state court decisions . . . rather than the decisions themselves." Id. at 438. The plaintiffs in Allen were challenging the policies underlying the state court custody proceedings, not arguing that the courts' decisions were wrongly made using those policies. See id. at 439. Similarly, Ms. Metzger is not challenging the Common Pleas Court's judgment that terminated her parental rights. Rather, she is alleging that Defendants violated her right to due process by not serving her with notice of the hearing at issue.[3]

---

[3]     Whether Ms. Metzger has successfully pled that Defendants' alleged failure to serve her with notice was their "policy" is a separate issue addressed by the Court, infra.

Ms. Metzger also argues that <u>B.S. v. Somerset County</u>, 704 F.3d 250 (3d Cir. 2013), supports her position that *Rooker-Feldman* does not bar the Court's jurisdiction here. In <u>B.S.</u>, a mother brought a civil rights suit against child welfare agency defendants alleging that they had violated her substantive and procedural due process rights by transferring custody of her daughter to the child's father without providing her with notice or a hearing soon afterward. In that case, the county defendants indicated their understanding that they did not need to comply with Pennsylvania law requiring that a hearing be held within 72 hours since the child's custody was transferred from one biological parent to another and the county never took custody of the child. <u>See id.</u> at 256-57. The Third Circuit held that *Rooker-Feldman* did not apply since the mother's alleged injury (*i.e.*, the initial taking of the child without a hearing) was traceable to the actions taken by the child welfare workers rather than to any court orders that those actions allegedly caused. <u>See id.</u> at 260. Similarly, in the present case, Ms. Metzger claims that her injury (not being served with notice) is traceable to Defendants' actions in not serving her with notice of the hearing regarding the termination of her parental rights. <u>See also</u> <u>Ernst v. Child and Youth Servs. of Chester County</u>, 108 F.3d 486, 491-92 (3d Cir. 1997) (holding that *Rooker-Feldman* did not bar a federal district court from hearing substantive due process claims because ruling that defendant child services workers made recommendations to the state court out of malice or personal bias would not have required the district court to find that state court judgments based on those recommendations were erroneous, nor would deciding substantive due process claims involve federal court review of the state court decision because a finding that defendants violated plaintiff's substantive due process rights by making biased recommendations would not have involved the invalidation of any conclusion reached by the state court).

Upon review of the allegations contained in the Amended Complaint as well as the relevant case law, the Court finds that Ms. Metzger's claims are not barred by the *Rooker-Feldman* doctrine. As noted, <u>supra</u>, Counts I and II of the Amended Complaint allege, albeit somewhat vaguely, that Defendants violated Ms. Metzger's due process rights by failing to serve her with notice of the termination hearing, which resulted in the termination of her parental rights without her receiving notice of that hearing. Finding that Defendants did not serve Ms. Metzger with notice of the hearing does not require this Court to find that the Common Pleas Court's decision that her parental rights should be terminated was wrongly made. See <u>Allen</u>, 861 F.3d at 438-39; <u>B.S.</u>, 704 F.3d at 250. In Counts I and II, Ms. Metzger is not seeking to reverse the Common Pleas Court's decision as she has raised claims against Defendants that are independent of that Court's judgment. Her claims, therefore, are not barred by the *Rooker-Feldman* doctrine.

Accordingly, the Court finds that it has jurisdiction over the due process claims alleged by Ms. Metzger in Counts I and II of her Amended Complaint.

**B. <u>Absolute Immunity of Ms. Duranti and Ms. Smith</u>**

Defendants argue that ACCYS caseworker Ms. Duranti is entitled to absolute immunity from liability in Counts I and II for her alleged actions in this case, while Plaintiffs contend that Ms. Duranti's alleged conduct is outside the scope of protected activity. Similar to the absolute immunity from Section 1983 liability that is granted to prosecutors for their actions in prosecuting criminal cases, child welfare workers "are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings." <u>Ernst v. Child and Youth Servs. of Chester County</u>, 108 F.3d at 495.

While Defendants agree that absolute immunity does not extend to cover *investigative* actions by a child welfare worker, they argue that the actions that Ms. Duranti allegedly took

occurred within the context of *prosecuting* the dependency proceedings at issue, and they assert that any such actions are therefore protected by absolute immunity. See, e.g., Burns v. Reed, 500 U.S. 478 (1991) (limiting the extent of prosecutors' absolute immunity from suit under Section 1983, depending upon the functions being performed). Specifically, Defendants note that the Amended Complaint alleges that Ms. Duranti attempted to serve Ms. Metzger with paperwork (which they say was notice of the termination hearing, but which Plaintiffs label "unspecified" paperwork) through Mr. Shallenberger. (Docket No. 57, ¶¶ 20-22). Plaintiffs argue, however, that they allege actions taken outside of initiation and prosecution of a case, citing their allegation that Ms. Duranti made false representations to Mr. Shallenberger and Ms. Bianco that they would be permitted to adopt the children (as well as by alleging that Ms. Duranti asked Mr. Shallenberger to serve paperwork on Ms. Metzger). (Id. ¶¶ 15, 20).

In considering that Counts I and II of the Amended Complaint are based on Defendants' alleged failure to serve Ms. Metzger with notice of the termination hearing, the misrepresentations allegedly made to Mr. Shallenberger and Ms. Bianco aver actions relevant to Count III (fraud), but they do not allege actions related to Defendants' alleged failure to serve Ms. Metzger. The allegations regarding Ms. Duranti's attempts to serve Ms. Metzger with paperwork, however, allege actions related to serving Ms. Metzger. As service of notice of a termination hearing is clearly related to preparing for, initiating, and prosecuting dependency proceedings, rather than investigation of such cases, the Court concludes that the alleged actions of Ms. Duranti regarding attempts to serve Ms. Metzger are covered by absolute immunity.

Defendants also argue that the Amended Complaint does not establish personal involvement by Ms. Smith in the alleged violation of Ms. Metzger's due process rights, and that the claim against her in her personal capacity should therefore be dismissed. See Rode v.

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (noting that liability under Section 1983 cannot be based on a *respondent superior* theory but must be predicated on personal involvement). Ms. Metzger asserts, however, that she has alleged Ms. Smith's personal involvement because the Amended Complaint alleges that Ms. Smith contacted Mr. Shallenberger and threatened to undermine his and Ms. Bianco's efforts to adopt the children if he did not serve paperwork on Ms. Metzger as Ms. Duranti had requested. (Docket No. 57, ¶ 22).

Similar to the alleged actions of Ms. Duranti, to the extent that the allegations of Ms. Smith's conduct describe alleged misrepresentations made to Mr. Shallenberger and Ms. Bianco, such conduct is relevant to Count III (fraud). To the extent that the alleged actions of Ms. Smith describe attempts to serve Ms. Metzger, however, they are relevant to the claim of failure to serve, but are – as with the alleged actions of Ms. Duranti related to her attempts to serve Ms. Metzger – covered by absolute immunity.

Therefore, because Ms. Duranti and Ms. Smith are absolutely immune from liability for actions allegedly taken by them in attempting to serve Ms. Metzger with notice of the hearing regarding termination of her parental rights, Ms. Metzger's due process claims in Counts I and II against Ms. Duranti and Ms. Smith, in their individual capacities, must be dismissed.

### C. **Count I: Procedural Due Process**

As explained, supra, Count I of the Amended Complaint alleges that Ms. Metzger was denied her right to procedural due process pursuant to 42 U.S.C. § 1983 because Defendants did not serve her with notice of the hearing in Common Pleas Court that resulted in the termination of her parental rights. (Docket No. 57, ¶¶ 24, 41). In order to state a claim for violation of procedural due process rights pursuant to 42 U.S.C. § 1983, "a plaintiff must allege that (1) he

was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).

Here, the Amended Complaint alleges that Defendants, Allegheny County and its named employees, acted under color of state law and acted willfully, knowingly and purposefully, with the intent to deprive Ms. Metzger of her liberty interests and rights, privileges and immunities secured by the Constitution and the laws of the United States, particularly:

    a.  Their liberty and privacy interest in maintaining custody of the minor child, V.G. [sic] without undue interference including removal from the home without notice and a hearing;[4]

    b.  The right to familial associations;

    c.  The right to freedom of intimate association;

    d.  The rights to substantive and procedural due process as secured by the 14th Amendment.

(Docket No. 57, ¶ 38).

The Court finds that, with regard to the first factor required to show a violation of procedural due process rights, Ms. Metzger has alleged that she was deprived of an interest protected under the Fourteenth Amendment because biological parents have been found to have a fundamental liberty interest in the "'care, custody, and management'" of their children. Miller v. City of Philadelphia, 174 F.3d 368, 373 (3d Cir. 1999) (quoting Santosky v. Kramer, 455 U.S. 745, 753 (1982)). As to the second requirement of Ms. Metzger's claim, that the procedures available to her denied her due process, the Court must determine whether she has alleged a

---

[4]      This allegation appears to include specific reference to claims in the original Complaint (Docket No. 1) in which Mr. Shallenberger and Ms. Bianco were also named as plaintiffs in Counts I and II.

denial of "notice and opportunity for hearing appropriate to the nature of the case." <u>Armstrong v. Manzo</u>, 380 U.S. 545, 550 (1965). The Amended Complaint broadly alleges that Ms. Duranti and Ms. Smith, who "were acting as agents of ACCYF and/or Allegheny County," "did not serve Metzger with the notice of the hearing where her parental rights were to be terminated, and so violated her due process rights." (Docket No. 57, ¶¶ 37, 41). It provides no further detail, however, to support or explain her claim that she was not served.

Defendants argue that Ms. Metzger has failed to state a plausible claim that they violated her procedural due process rights because the Common Pleas Court dockets clearly show that she *was served* with notice of the hearing, as described <u>supra</u>. Further, "it is well-established that a court need not accept as true allegations contained in a complaint that are contradicted by matters of which the court may take judicial notice." <u>Mollett v. Leith</u>, No. 09-1192, 2011 WL 5407359, at *2 (W.D. Pa. Nov. 8, 2011) (citing <u>Commonwealth Edison Co. v. United States</u>, 46 Fed. Cl. 158, 160 n. 3 (Fed. Cl. 2000), <u>aff'd</u>, 271 F.3d 1327 (Fed. Cir. 2001)). For example, "courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in disposing of a motion to dismiss under Rule 12(b)(6)." <u>Id.</u> (citing <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); <u>Chester County Intermediate Unit v. Pa. Blue Shield</u>, 896 F.2d 808, 812 (3d Cir. 1990); <u>Lloyd v. United States</u>, No. 99 C 3347, 1999 WL 759375, at *1 (N.D. Ill. Sept. 3, 1999) ("As the court may take judicial notice of public records without converting a motion to dismiss to a motion for summary judgment, *Henson v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir.1994), the court will take judicial notice of court records in conducting its initial review under § 1915A.")).

Here, the underlying state court dockets show that Judge Cozza issued orders ratifying service by publication in these matters, and indicating that notice had been given to Ms. Metzger

because notice of the proposed petitions, along with the date, time and place of the August 31, 2018 hearing, had been published in two newspapers once a week for three successive weeks (the last publication appearing not less than ten days before the hearing). (Docket Nos. 35-12, 35-14). Notably, Ms. Metzger does not argue that such service by publication did not take place.

Under Pennsylvania law governing the involuntary termination of parental rights, at least ten days' notice must be given to parents "whose rights are to be terminated, by personal service or by registered mail to his or their last known address *or by such other means as the court may require*." 23 Pa. C.S. § 2513(b) (emphasis added). Additionally, the Pennsylvania Orphans' Court Rules permit service by publication with regard to notice of hearings on petitions for the involuntary termination of parental rights. See 231 Pa. Code Rules 15.4(d), 15.6. Specifically, Rule 15.6 provides that:

> (a) Notice to every person to be notified shall be by personal service, service at his or her residence on an adult member of the household, or by registered or certified mail to his or her last known address. *If such service is unobtainable* and the registered mail is returned undelivered, then:
>
> > (1) no further notice shall be required in proceedings under Rules 15.2 or 15.3, and
> >
> > (2) in proceedings under Rules 15.4 [Involuntary termination of parental rights] and 15.5 [Adoption], *further notice by publication or otherwise shall be given if required by general rule or special order of the local Orphans' Court.*[5]

---

[5]     The Allegheny County Orphans' Court Rules provide, with regard to petitions for the involuntary termination of parental rights:

> At least ten (10) days' notice of the hearing on the petition shall be given to the parent or parents, putative father, or parent of a minor parent whose rights are to be terminated and to the natural or appointed guardian of any parent or parents who is or are under the age of eighteen (18) years, by personal service or by registered mail to his or their last known address. *Where personal service is not obtainable and the return receipt of the registered or certified mail does not bear the signature of the person to be notified, notice shall be given under appropriate Order of Court in accordance with Section 1(c) and (d) of Rule 12 of the Court, the last published notice to be at least ten (10) days prior to the date of hearing*, the Court shall make a finding relative to the pertinent provisions of 23 P.A.C.S. Section 2531 of

231 Pa. Code Rule 15.6 (Pa. O.C. Rule 15.6(e)) (emphasis added).

In this case, Ms. Metzger bases her procedural due process claim solely on the allegation that Defendants did not serve her with notice of the Common Pleas Court hearing regarding termination of her parental rights. The Court, however, takes judicial notice of the Common Pleas Court dockets and Orders Ratifying Service by Publication in the underlying cases – the accuracy of which cannot be reasonably questioned – which indicate that notice of the termination hearing *was served* upon Ms. Metzger by publication. Further, with regard to hearings on the termination of parental rights, notice by publication is permissible under Pennsylvania law and the local rules of court. Therefore, as the Court need not accept as true allegations that are contradicted by matters of which the Court may take judicial notice, and as the Court finds that the broad allegation upon which Ms. Metzger relies in claiming a due process violation has been shown to be false, and as Ms. Metzger has failed to provide sufficient detail upon which otherwise to explain or support her claim, the Court further finds that Ms. Metzger has failed to state a claim for violation of procedural process upon which relief can be granted.[6]

---

the Adoption Act, which finding shall be incorporated in a decree of termination of parental rights.

Allegheny O.C. Rule 15.6(e) (emphasis added).

Additionally, Local Rule 2 of the Allegheny County Civil Court Rules, "Notice by Publication," provides:

(1) In all actions where notice is required to be given by advertisement in a newspaper, proof of publication shall be made by the affidavit of the owner, publisher or the designated agent thereof and filed of record before the entering of any final order, decree or judgment.

(2) The Pittsburgh Legal Journal is designated as the newspaper of this Court for the publication of legal notices. All notices which are required to be advertised in a newspaper shall also be advertised in the Pittsburgh Legal Journal.

[6] The Court's ruling is based on the broad allegation that Ms. Metzger was not served in the proceeding below, even though the records from that proceeding clearly indicate that she was served by publication in accordance with applicable Pennsylvania law. To the extent that Ms. Metzger may wish to argue that the method of

Accordingly, Count I of the Amended Complaint will be dismissed as to all Defendants.

### D.  Count II:  Substantive Due Process

The Amended Complaint alleges in Count II, pursuant to 42 U.S.C. § 1983, that Ms. Metzger's substantive due process rights, including her rights to familial association, freedom of intimate association and family privacy, were violated because Defendants failed to serve her with notice of the hearing on the termination of her parental rights, and thereby deprived her of that hearing.  Although Count II, as pled, is not a model of clarity, Ms. Metzger appears to raise a *Monell* claim against Allegheny County (see discussion, infra), alleging that it was the policy, custom and practice of the County not to serve parents with the petitions to terminate their parental rights, and/or that the County failed to train its employees to serve parents properly. (Docket No. 57, ¶¶ 42, 52).   Ms. Metzger also seemingly asserts these claims against Ms. Duranti and Ms. Smith in both their individual and official capacities, while she does not state the capacity in which Mr. Cherna is being sued.[7]

---

service used was improper, or that the service by publication was improperly executed, or some other argument to dispute the Common Pleas Court's orders ratifying service, the Amended Complaint contains no such allegations, and if it did, the Court would necessarily engage in an altogether different analysis including a new evaluation of whether *Rooker-Feldman* bars consideration of such an action by this Court.

[7]     Because Ms. Duranti and Ms. Smith are absolutely immune from Section 1983 liability in their personal capacities for actions regarding service alleged in the Amended Complaint, only the official-capacity claims against them remain to be considered in Count II.  Although Ms. Metzger does not state the capacity in which Mr. Cherna is being sued, she makes no allegations of personal actions taken by him involving Plaintiffs specifically, and she alleges only that he failed to ensure that ACCYF employees were properly trained.  Thus, the Amended Complaint appears to bring suit against Mr. Cherna in his official capacity in conjunction with a *Monell* claim alleging municipal liability against Allegheny County and its employees.  To the extent that Ms. Metzger may wish to sue Mr. Cherna in his individual capacity, the Court notes that she has alleged no actions taken by him involving her specifically, nor has she alleged some personal conduct by him as a supervisor.  See, e.g., Booker v. Borough of North Braddock, No. 2:19-cv-01649, 2021 WL 37618, at *3-4 (W.D. Pa. Jan. 5, 2021) (explaining that to establish supervisory liability against a government official in their individual capacity under Section 1983, a plaintiff must allege that they were personally involved in the commission of the conduct alleged); Snatchko v. Peters Township, No. 2:12-cv-1179, 2012 WL 6761369, at *11 (W.D. Pa. Dec. 28, 2012) (noting that the Supreme Court has recognized limited circumstances where a failure-to-train allegation can be the basis for Section 1983 liability,  but that the Third Circuit "appears to have endorsed the need for a plaintiff to likewise demonstrate that a government official was personally involved").

    Therefore, claims to be considered in Count II remain against Allegheny County and Mr. Cherna, Ms. Duranti, and Ms. Smith in their official capacities.  However, "[a] suit under § 1983 against a municipal officer in his official capacity is in actuality a suit directed against the municipality that the officer represents.'"  Snatchko v.

Section 1983 functions as a "vehicle for imposing liability against anyone who, under color of state law, deprives a person of 'rights, privileges, or immunities secured by the Constitution and laws.'" Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel, 570 F.3d 520, 525 (3d Cir. 2009) (quoting 42 U.S.C. § 1983). As discussed with regard to her procedural due process claim, supra, it is clear that the facts alleged by Ms. Metzger, viewed in the light most favorable to her, sufficiently allege a putative violation of her federally protected rights, including her rights to familial associations and freedom of intimate association, and her fundamental liberty interest in the "care, custody, and management" of her children. See Miller v. City of Philadelphia, 174 F.3d at 373.

To hold Allegheny County liable for such violations as substantive due process violations under Section 1983, however, Ms. Metzger must allege more than a violation of her rights by Defendants' employees; rather, she must also sufficiently plead that those alleged violations are attributable to Defendants. "'[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.'" Robinson v. Fair Acres Geriatric Ctr., 722 F. App'x 194, 197-98 (3d Cir. 2018) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Instead, the alleged violation of rights must have been caused by actions that were taken pursuant to a municipal "policy" or "custom." See id. at 198 (citing Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003)); see also Monell, 436 U.S. at 690-94 (explaining what has been referred to as *Monell* liability). "A policy is made 'when a decisionmaker possess[ing] final

Peters Township, 2012 WL 6761369, at *11 (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985). An official-capacity claim "is generally merely another way of pleading an action against an entity of which an officer is an agent," and "[s]uch a suit is properly treated as a suit against the entity." Id. Since the Amended Complaint alleges claims against Mr. Cherna, Ms. Duranti, and Ms. Smith in their official capacities in Count II for following a policy, custom, and practice of failing to serve parents with petitions to terminate their parental rights, the Court will address those claims along with the same claim made against Allegheny County.

authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'" Natale, 318 F.3d at 584 (quoting Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996)). A "custom" involves "practices of state officials . . . so permanent and well settled as to constitute a 'custom or usage' with the force of law." Monell, 436 U.S. at 691.

A government employee's acts may be deemed to be the result of a policy or custom of the entity for whom that employee works in three types of situations: (1) "where 'the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy;'" (2) "where 'no rule has been announced as "policy" but federal law has been violated by an act of the policymaker itself;'" and (3) "where 'the policymaker has *failed to act affirmatively* at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been *deliberately indifferent* to the need.'" Natale, 318 F.3d at 584 (quoting Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 417-18 (1997) (emphasis added, and internal quotation marks and citation omitted)).

It is unclear which of these theories of liability Ms. Metzger is pursuing in Count II. The Amended Complaint specifically alleges that "Defendants followed a policy, custom, and practice of failing [to] serve parents with the petitions to terminate their parental rights," without providing any further detail alleging what that policy, practice or custom was. (Docket No. 57, ¶ 52). The Amended Complaint also alleges that Mr. Cherna, "who had the power to make decisions and create policy for ACCYF, failed to ensure that employees of ACCYF, including Defendants Smith and Duranti, were trained to properly notice biological parents before terminating their rights." (Id. ¶ 42).

Ms. Metzger argues that the Amended Complaint sufficiently pleads a County policy or custom, noting that "it is certainly plausible that ACCYF moved forward to terminate Metzger's parental rights without notice because they were in the practice of doing so," and that ACCYF, headed by Mr. Cherna, "likely failed to train their employees in the requirements of notice and due process in the termination of parents' rights," or "[i]f not, it is equally likely that ACCYF operates under a custom of ignoring their training and moving forward to terminate parental rights without carefully complying with the requirements of due process." (Docket No. 69 at 8). Upon review of the Amended Complaint, the Court finds Ms. Metzger's allegations regarding an alleged policy or custom to be unacceptably vague, broad, and altogether lacking in factual specificity, and therefore to constitute hollow averments attempting to couch possible theories as facts. Because the Amended Complaint provides no additional facts about Defendants' alleged customs or policies, such general references to policies or customs are merely conclusory.

Additionally, the only particular policymaker identified in the Amended Complaint is Mr. Cherna, who allegedly failed to ensure that ACCYF employees were properly trained. Ms. Metzger does not, however, plead that any particular policymakers took *affirmative action* that caused her injuries, nor does she plead that any *specific actions taken by particular policymakers* could be fairly treated as policy or custom. See Robinson, 722 F. App'x at 198. Accordingly, since Ms. Metzger does not allege in the Amended Complaint that her injuries were "caused by affirmative actions on the part of a particular policymaker," her claim cannot proceed based on either of the first two theories of establishing liability. Id.; see Thomas v. County of Chester, Pocopson Home, 312 F. Supp. 3d 448, 454 (E.D. Pa. 2018); Doyle v. Neshaminy Manor, Inc., No. 2:18-cv-00098, 2018 WL 1954119, at *5 (E.D. Pa. Apr. 25, 2018).

Nevertheless, since Ms. Metzger argues that Count II is based – at least in part, or in the alternative – on Defendants' alleged failure to train its employees, that claim may proceed under the third theory of establishing liability if the Amended Complaint adequately avers a failure to act that demonstrates deliberate indifference.  See Robinson, 722 F. App'x at 198-99 (discussing Monell, 436 U.S. at 658, and Natale, 318 F.3d at 575).  In order for a failure-to-train claim to succeed, however, Plaintiffs must show policymakers' "'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees.'"  Id. at 199 (quoting Bryan County, 520 U.S. at 407).  Additionally, "'for liability to attach in this circumstance the identified deficiency in a [municipal]ity's training program must be closely related to the ultimate injury.'"  Id. (quoting City of Canton v. Harris, 489 U.S. 378, 391 (1989)).

Upon review of the Amended Complaint, the Court finds that the allegations contained therein are insufficient to meet these standards.  First, the Amended Complaint contains no additional factual allegations to support the broad claim that Defendants failed to train their employees.  As noted, the only reference to a failure to train is a bald assertion, unaccompanied by any additional details, that Mr. Cherna failed to ensure that employees of ACCYF "were trained to properly notice biological parents before terminating their parental rights."  (Docket No. 57, ¶ 42).  Such averment, quite simply, does not allege a continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees, nor does it allege that a specific failure to train was closely related to the ultimate injury allegedly suffered by Ms. Metzger.  See, e.g., Robinson, 722 F. App'x at 199-200 (finding that a Section 1983 claim was sufficiently pled under a failure-to-train theory where plaintiff alleged the facility's training to be inadequate; plaintiff's injuries involved infection, gangrene and loss of her leg; plaintiff cited the fact that the facility allegedly received deficiency citations for

failing to maintain infection control; and the deficiency in the training program included failure to maintain infection control; then the identified deficiency in the training program was shown to be closely related to the ultimate injury); Snatchko v. Peters Township, No. 2:12-cv-1179, 2012 WL 6761369, at *12 (W.D. Pa. Dec. 28, 2012) (finding plaintiff's "rote recital," that defendant refused to adequately train, direct, supervise, or control his subordinate to prevent a violation of plaintiff's Constitutional rights, was not sufficient to show personal involvement in carrying out training procedures such that defendant could plausibly be held liable under that theory). Therefore, Plaintiffs have also failed to allege a claim against Defendants based on the third theory of establishing *Monell* liability, a failure to act (in this case, a failure to train) demonstrating deliberate indifference to a need to take action.

Accordingly, Ms. Metzger has failed to state a claim for deprivation of her civil rights pursuant to Section 1983 based on Defendants' alleged policy or custom, or a failure to train. Count II of the Amended Complaint will therefore be dismissed against all Defendants without prejudice.

### E. Count III: Derivative State Law Claim of Fraud

Count III of the Amended Complaint alleges a derivative state law fraud claim by Mr. Shallenberger and Ms. Bianco against all Defendants. As Counts I and II of the Amended Complaint are being dismissed, and as Count III does not present independent grounds for federal subject matter jurisdiction, the Court lacks supplemental jurisdiction over such claim. See 28 U.S.C. § 1367; Lyon v. Whisman, 45 F.3d 758, 760 (3d Cir. 1995). Therefore, Count III of the Amended Complaint will be dismissed without prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

**IV. Conclusion**

For the reasons stated, Defendants' motion to dismiss is GRANTED. Counts I and II of the Amended Complaint are dismissed for failure to state claims upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), and Count III of the Amended Complaint is dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Additionally, all Counts of the Amended Complaint are DISMISSED WITHOUT PREJUDICE to amendment with sufficient facts to state a claim.

An appropriate Order follows.


Dated: July 8, 2021                                      *s/ W. Scott Hardy*
                                                        W. Scott Hardy
                                                        United States District Judge

cc/ecf: All counsel of record